IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CALVIN MAYFIELD, M35186, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 23-cv-1642-DWD |
| CATHY MCCLURE and SHANNON DENMAN, | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Calvin Mayfield, an inmate of the Illinois Department of Corrections (IDOC) brought this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Pinckneyville Correctional Center (Pinckneyville). Plaintiff alleges that Defendants Cathy McClure and Shannon Denman were both mental health professionals who participated in denying him adequate mental health care. The Defendants filed a Motion for Summary Judgment (Docs. 100, 101) on the issue of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Plaintiff filed a timely response (Doc. 106), and Defendants replied (Doc. 107). For reasons explained in this Order, the Defendants' Motion is denied in full.

## BACKGROUND

Plaintiff initiated this lawsuit by filing a complaint on May 9, 2023. (Doc. 1 at 50). Relevant to Defendants McClure and Denman, he alleged that McClure created his initial

mental health treatment plan at Pinckneyville which included a recommendation for 30 minutes of one-on-one therapy per month.  McClure also engaged with him on a few occasions.  He alleges Denman provided a boilerplate treatment plan in 2022 that did nothing to address his ongoing mental health needs, and she ignored his requests for further assistance.  Upon initial review, the Court designated this claim:

> Claim 1:    Eighth Amendment deliberate indifference claim against McClure and Denman concerning Plaintiff's access to adequate mental health care.

(Doc. 8 at 4).  Plaintiff later filed an Amended Complaint (Doc. 19), but it did not alter the allegations or claims against McClure or Denman (Doc. 18).  There were other claims and parties in this lawsuit, but those claims and parties were resolved by a settlement earlier this year.

The parties undertook discovery on the exhaustion of administrative remedies, and in doing so the Defendants identified several grievances that are potentially relevant to the sole claim.  Of those identified, Plaintiff focused on just four grievances in his response that he contends were collectively or individually sufficient to exhaust the sole remaining claim in this case.

## FINDINGS OF FACT

In early February of 2022, Plaintiff submitted a grievance about his access to mental health care and his single-cell status.  (Doc. 101-2 at 82).  The grievance was assigned number 513-02-22.  (Doc. 101-2 at 80).  In a July 6, 2022, response, the grievance officer indicated that Plaintiff had contact with Cathy McClure on multiple dates from November 4, 2021, through March 2, 2022.  (Doc. 101-2 at 81).  On July 6, 2022, the CAO

concurred with the denial of the grievance. The grievance was initially received by the ARB on August 1, 2022. An ARB official wrote on August 5, 2022, that the grievance was being returned because Plaintiff failed to provide the "DOC0046". (Doc. 101-2 at 85). Plaintiff then requested copies of the "DOC0046" form for grievance 513-02-22, and a counseling summary indicated he received those copies on September 1, 2022. (Doc. 101-2 at 86). Plaintiff then re-transmitted the grievance appeal to the ARB where it was received on September 9, 2022. (Doc. 101-2 at 79). Upon receipt of this second appeal, the ARB rejected it as received more than 30 days beyond the CAO's underlying denial of the grievance. (Doc. 101-2 at 79).

The same exact series of events transpired for grievance 1784-06-22, which Plaintiff originally filed on June 26, 2022. (Doc. 101-2 at 90-91). In grievance 1784-06-22, Plaintiff grieved that as of June 2022, he had not received a one-on-one counseling session since his last session with McClure in November or December of 2021. (Doc. 101-2 at 91). This grievance was addressed by the grievance office on the same day (July 6, 2022) as grievance 513-02-22, and it received the same exact response. The CAO affirmed the denial of the grievance on July 6, 2022. It took the same course to the ARB, was rejected for lack of a DOC0046, and was later rejected as submitted beyond the 30-day deadline. (Doc. 101-2 at 87-89, 92).

On December 23, 2022, Plaintiff submitted a grievance concerning an October 29, 2022, interaction with a mental health professional who visited his cell front to secure his signature on an updated or renewed mental health treatment plan. The grievance was assigned number 3604-12-22. (Doc. 102-1 at 27). He described this mental health

professional as a "newer black lady—name maybe begin with "D"? (Doc. 101-2 at 29). He complained that this individual was unwilling to discuss his concerns about the adequacy or implementation of the plan. (Doc. 101-2 at 29-30). A grievance officer prepared a response on January 6, 2023, wherein he simply indicated Plaintiff was "being seen frequently" and that the treatment plan remained the same as the prior year's plan. (Doc. 101-2 at 27-28). The CAO agreed with the denial of the grievance on January 6, 2023, (Doc. 101-2 at 27), and the grievance is stamped as received by the ARB on January 17, 2023. On April 24, 2023, the ARB denied the grievance as appropriately addressed by the administration. (Doc. 101-2 at 26). In response to summary judgment, Plaintiff submitted an excerpt from his mental health record that reflects on October 29, 2022, Shannon Denman presented his mental health master treatment plan for signature. (Doc. 106 at 29).

Finally, on January 14, 2023, Plaintiff submitted a grievance assigned number 223-01-23. (Doc. 101-2 at 53-54). In the grievance he alleged that since September of 2021 he had experienced an ongoing denial of mental health treatment. He indicated he was unsure if there was a retaliatory reason for the denial of the care he sought. He specifically mentioned wanting one-on-one sessions. He further indicated the total lack of needed care led to a mental health crisis on December 19, 2022. (Doc. 101-2 at 53). Plaintiff explained that he continued to experience a mental health crisis at the time of writing the grievance because none of his correspondence of any form about his mental health needs garnered any needed mental health assistance, and even when he was on crisis watch in December of 2022 after a self-harm incident he did not timely receive

depression medication and he did not receive additional mental health care. (Doc. 101-2 at 52-53). In response on January 26, 2023, the grievance officer said nothing at all about the lack of past care, and instead simply indicated that Plaintiff had been seen a handful of times by mental health professionals and a BHT in "confidential" settings from late December of 2022 into January of 2023. (Doc. 101-2 at 51-52). The CAO agreed with the denial of the grievance on January 26, 2023.

Grievance 223-01-23 was stamped as received by the ARB on February 28, 2023. (Doc. 101-2 at 51). Due to the date of arrival at the ARB, on March 1, 2023, the ARB rejected the grievance as received more than 30 days beyond the CAO's ruling. (Doc. 101-2 at 50). Plaintiff submitted an authorization for payment form dated February 6, 2023, for the postage to send grievance 223-01-23 to the ARB. (Doc. 106 at 24). He also submitted his trust fund account which reflected the deduction of the postage on February 10, 2023. (Doc. 106 at 28).

## CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is

not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal. *See e.g., Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. 20 ILL. ADMIN. CODE § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance. *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* If an inmate is appealing a grievance that the CAO determined to be of an emergency nature, then the ARB shall expedite processing of the appeal. 20 ILL. ADMIN. CODE § 504.850(f).

B.  Analysis

The Court will address the sufficiency of the grievances to exhaust Claim 1 against Defendants McClure and Denman in chronological order. The Court does not find it is necessary to hold an evidentiary hearing in this case because the disputes about the grievances turn largely on legal determinations, and do not require the Court to make determinations about contested facts.

First, Plaintiff attempted to submit grievances 513-02-22 and 1784-06-22 in February and June of 2022. The parties ultimately discuss these grievances as they pertain

to exhaustion just for Defendant McClure, so the Court will consider them thru this lens. Both grievances got the same response from Pinckneyville officials on July 6, 2022. Both grievances discussed Plaintiff's need for appropriate mental health treatment, and the responses discussed encounters Plaintiff had with Defendant McClure during the relevant time. The ARB received the grievance appeals on August 1, 2022, but rejected them because neither appeal contained the DOC0046 form---which is the copy of the offender's original underlying grievance. Plaintiff then requested these documents from the prison, he has a counseling summary to prove that he did this, and he retransmitted the documents to the ARB where they were rejected a second time in September of 2022. The second rejection was issued because the documents were received at the ARB more than 30 days after the CAO's July 6, 2022, ruling.

The Defendants argue that these grievances cannot suffice for exhaustion because Plaintiff did not fully and properly comply with the grievance rules. Despite the grievance form from the grievance officer and CAO stating that an appeal must be accompanied by "a complete copy of the original grievance including the counselor's response," Plaintiff did not transmit the DOC0046 form. The Defendants argue that as an experienced grievance filer, he should have known that transmitting an incomplete appeal would not be acceptable. They further argue that he should have remedied the problem more quickly but waited more than a month to ask his counselor for copies of the DOC0046. They also contend that when he re-transmitted the appeal to the ARB, it was sent too late.

Plaintiff counters that only the grievance form itself, but neither the offender manual nor the Administrative Code specific that a DOC0046 form is required for an appeal. He contends that because the offender manual is a more recent document, it controls what is necessary to appeal. He provided a copy of the 2020-2021 offender manual from Pinckneyville that states "copies of the grievance officer's report and the Chief Administrative Officer's decision should be attached." (Doc. 106 at 32). He also argues that on a different occasion when an appeal was missing a DOC0046, the ARB member checked a box on the return form indicating this specific information was missing, but with grievances 513-02-22 and 1784-06-22 the ARB person did not check this box and did not invite the submission of the missing materials. He argues this amounts to misconduct or action that made the process effectively unavailable to him. In support of his position that the prison officials thwarted his ability to use the process, he cites to *Dole v. Chandler*[1], and points out that there the Seventh Circuit indicated the outcome of the case could have been different if prison officials gave the inmate instructions on how to fix a problem and how to proceed.

Plaintiff is correct, the Administrative Code and the Pinckneyville Offender Manual clearly and unequivocally state that the grievance officer and CAO's response must be attached to an appeal, but neither of these texts say that the DOC0046 form must

---

[1] *Dole v. Chandler*, 438 F.3d 804 (7th Cir. 2006). Plaintiff discusses *Dole* for the proposition that he followed grievance procedures, and the prison administration left him with no clear way forward to remedy a defective grievance, thus making the process unavailable. Defendants counter in their reply brief that *Dole* is not analogous and cuts against Plaintiff's position. The Court need not analyze the exact reading of *Dole* with greater scrutiny because other cases cited in this portion of the analysis bear greater similarity to Plaintiff's exact situation in this case.

be attached. The DOC0046 form is the original form that an inmate uses to file a grievance, and that contains an area for the counselor to respond if a counselor response is needed for an appeal. (Doc. 101-2 at 90-91). The grievance officer and CAO's responses are then provided to the inmate on a DOC0047 form, and that form contains a small box at the bottom for an inmate to sign when he wishes to transmit an appeal to the ARB. (Doc. 101-2 at 88-89). In this small box, there is fine print that says, "Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents." (Doc. 101-2 at 18).

Defendants and the ARB have obviously adopted the stance that this text on the DOC0047 form creates an additional obligation for inmates. The ARB has a "return of grievance correspondence" form that is transmitted when a grievance is not being answered on the merits. (Doc. 101-2 at 85). The form has checkboxes where an appeal can be returned if more information is needed, and that section of the form includes a checkbox that says: "provide your original grievance, DOC0046, including the counselor's response, if applicable." (*Id.*). The same section of the form also has a check box asking the inmate to "return the attached grievance or correspondence with the additional information requested" to a designated address in Springfield. (*Id.*).

In Plaintiff's situation, rather than use the pre-printed check boxes, the ARB member wrote in the "other" section of the return of grievance form that it was being returned because "grievant fails to provide DOC0046 therefore unable to review." (Doc. 101-2 at 85, 92). Plaintiff sought the missing forms from his counselor, received the forms on September 1, 2022, and re-transmitted them to the ARB. The grievances with the

DOC0046 information arrived back at the ARB on September 9, 2022, but both were then rejected as received beyond the 30-day timeframe. (Doc. 101-2 at 79, 87).

In *Reid v. Balota*, 962 F.3d 325 (7th Cir. 2020), the Seventh Circuit considered a similar situation. The inmate in *Reid* appealed a grievance, but his appeal was returned because it did not include a copy of the counselor's response. The *Reid* Court noted that the ARB did NOT check the additional box on the form inviting the inmate to resubmit his appeal with the counselor's form, thus leaving the inmate with no way to proceed. *See also, Wilson v. Wexford Health Sources, Inc.*, 957 F.3d 828, 833 (7th Cir. 2020) (noting that the ARB checked boxes indicating the inmate had not properly followed standard procedure by including copies of his counselor and grievance officer responses, but the ARB did NOT check the box simply inviting more information). The *Reid* Court characterized this series of events and the lack of direction to the inmate as making the process "obscure" and unavailable. *Reid*, 962 F.3d at 330; *see also Butler v. Orenstein*, 2024 WL 4379569 at * 3 (7th Cir. Oct. 3, 2024) (unpublished) (reiterating that if the ARB checks a box for an appeal missing attachments, but does not give instructions on next steps, then further redress is unavailable).

Here, the Court finds that Plaintiff did all that he could to exhaust grievances 513-02-22 and 1784-06-22. He submitted timely appeals of these grievances, and the materials that he submitted complied with the Administrative Directives and the Offender handbook. When the ARB rejected his materials as incomplete, on both rejection of grievance forms the ARB official entirely ignored the pre-printed check boxes to indicate the appeals were missing information, and ignored the check box that would have invited

Plaintiff to remedy the problem. This is similar to the circumstance in *Reid*, where the Seventh Circuit found that the ARB's actions obscured the process and rendered any further exhaustion effort unavailable. Despite the lack of instruction from the ARB, Plaintiff made further efforts to remedy the problem by requesting the missing documents from his counselor and re-submitting his appeal.

The Defendants argue that the re-submission was done slowly and that because the re-submitted materials arrived at the ARB more than 30 days after the CAO's final ruling, the grievance was untimely. Realistically, it is hard to imagine a situation where an inmate might submit a defective appeal, get a ruling from the ARB identifying the defect, and have time to fix the defect and re-transmit the appeal all within 30 days of the CAO's original signature on the grievance. The grievance process, the institutional mail, and the United States Postal service all cause a certain amount of unavoidable delays. The Administrative Code, the offender manual, and the grievance forms themselves provide no further direction about what an inmate could reasonably do in a situation such as the one Plaintiff faced. To his credit, unlike other inmates in *Reid* or *Wilson* who did not take any further steps after the ARB rejection, Plaintiff at least tried to remedy the problem. Thus, on the facts presented, the Court finds that Plaintiff did all that he could to exhaust these grievances. It is also important to note that these grievances were processed at all levels at the prison, so the core purpose of the grievance requirement— to give prison officials notice and a chance to respond—was served regardless of the procedural defects encountered during the grievance appeal. As such, the Court concludes that Plaintiff's allegations in grievances 513-02-22 and 1784-06-22 were

properly exhausted, and that these grievances are sufficient to satisfy the PLRA's exhaustion requirement for the claim against Defendant McClure.

Next, the parties argue about whether grievance 3604-12-22 was sufficient to exhaust Plaintiff's claim against Defendant Denman. In the grievance, Plaintiff referred to Denman as a "newer black lady" who visited his cell on October 29, 2022, to have him sign an updated mental health treatment plan. The Illinois Administrative Code specifically provides that it does not "preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." 20 Ill. Admin. Code 504.810(c). Plaintiff did just this by giving a physical description, a date of the encounter with this provider, and his best guess, that her name may start with a "D." If grievance officials had bothered to review his mental health records, they easily could have seen that on October 29, 2022, Defendant Denman and Plaintiff both signed his updated master treatment plan, which he ultimately attached as an exhibit to his summary judgment response. (Doc. 106 at 29). Thus, the grievance provided sufficient information to readily identify Denman. *See e.g.*, *Jackson v. Esser*, 105 F.4th 948, 959-60 (7th Cir. 2024) (nothing in the PLRA imposes a "name all defendants" requirement, instead a grievance must give enough information about who caused the problem so that the prison can investigated); *Bakaturski v. Brookhart*, 2021 WL 5866920 at * 5 (S.D. Ill. Dec. 10, 2021) (inmate's failure to explicitly name a defendant in a grievance did not render in insufficient for exhaustion where the grievance was descriptive, and talked about issues relating to specific care that

only one defendant would have provided). Grievance 3604-12-22 was sufficient to exhaust Plaintiff's allegations against Defendant Denman.

Finally, the Defendants initially argued in conjunction with multiple other grievances that grievance 223-01-23 was not sufficient to exhaust the claims in this case because it did not clearly name or describe actions by Defendants McClure or Denman. Plaintiff counters that it clearly covered their conduct as its complaint about his care or lack thereof over a course of a year when they were both at times assigned as his sole provider, and when each of them prepared a treatment plan for him. He also argues that despite this grievance being deemed untimely by the ARB, it should have been considered timely under the prison mailbox rule. The Defendants state in reply that they cannot take a position on the mailbox rule issue, but that they maintain the contents of the grievance was insufficient for exhaustion.

Grievance 223-01-23 was signed by the CAO on January 26, 2024, and the ARB did not receive the appeal until February 28, 2024. Plaintiff argues that he sent the appeal with ample time for it to arrive, and he supports his position with proof that he requested the funds be deducted from his account February 6, and that they were deducted February 10, 2024. (Doc. 106 at 24, 28). Although the Seventh Circuit has not explicitly endorsed the applicability of the prison mailbox rule to the PLRA exhaustion context, many courts in this circuit have applied the prison mailbox rule in this context. *See e.g.*, *Warren v. Jeffreys, et al.*, 2023 WL 6605433 at * 6 (S.D. Ill. Oct. 10, 2023) (collecting cases for the proposition that per the prison mailbox rule, a grievance is filed when the prisoner places it in the mail); *Taylor v. Brown*, 787 F.3d 851, 858-59 (7th Cir. 2015) (federal courts

generally apply the prison mailbox rule which provides that an inmate's document is "filed" at the moment the inmate places it in the prison mail system). Here, the Court agrees that by February 10 at the latest, Plaintiff had done everything he could to transmit his appeal to the ARB in a timely fashion. Applying the prison mailbox rule and treating his appeal as lodged on February 10, 2024, it would have been well within the 30-day window.

The Court must also consider if the contents of this grievance was sufficient to exhaust the allegations against Defendants McClure and Denman. In the grievance, Plaintiff explains that since his arrival at Pinckneyville in September of 2021 he repeatedly sought mental health care, especially one-on-one treatment. He filed grievances, asked any mental health professional who he encountered, and he transmitted other correspondence in an ongoing attempt to secure the care he felt he needed. He explains that eventually he reached a breaking point in December of 2022 at which time he engaged in self-harm and was placed on crisis watch. The grievance response all but ignores Plaintiff's lengthy complaints about his efforts to secure mental health care from September of 2021 thru the filing of the grievance in mid-January of 2023. The mental health response states: "since seeing this MHA on 12/23/22, Mr. Mayfield has been seen by Brittni Roldan, PNP on 12/26/22, Sydelle Fulk, QMHP on 12/26/22, Erika Moody, BHT on 1/4/23, and Sydelle Fulk, QMHP on 1/19/23." This response pales in comparison to the seriousness of the allegations in Plaintiff's grievance. The grievance records and Plaintiff's allegations throughout the documents in this case demonstrate that Plaintiff did everything in his power to seek help from the prison. Against this

backdrop, the Court is unwilling to find this grievance insufficient to exhaust Plaintiff's claims. Plaintiff clearly and unequivocally complained to prison officials in this grievance that for more than a year his mental health needs had not been met, and the prison officials chose to limit their response to just a few weeks period after Plaintiff experienced a mental health crisis and acted out in self-harm. The officials' selective response to the grievance does not change the fact that it provided ample notice of Plaintiff's ongoing mental health struggle. Accordingly, the Court finds that grievance 223-01-23 was also sufficient to exhaust claim 1.

In conclusion, Plaintiff has sufficiently exhausted the grievance process for the claim in this case against Defendants McClure and Denman. The Defendants' Motion for Summary Judgment (Doc. 100) is denied, and this case shall proceed to merits discovery.

## DISPOSITION

Defendants' Motion for Summary Judgment on the issue of exhaustion (Doc. 100) is **DENIED**. Claim 1 may proceed against Defendants McClure and Denman. A merits discovery schedule will issue by separate order.

Plaintiff's Motion for Status (Doc. 103) and Motion for a Copy (Doc. 109) are **GRANTED** by the issuance of this Order. The Clerk is **DIRECTED** to send a copy of the docket sheet to Plaintiff.

**IT IS SO ORDERED.**

Dated: October 21, 2024

DAVID W. DUGAN
United States District Judge